IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Yvonne Bowles,

    Plaintiff,

v.

Transunion, LLC, et al.,

    Defendants.

Case No: 2:23-cv-717

Judge Graham

Magistrate Judge Vascura

<u>Opinion and Order</u>

This action was brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against three consumer reporting agencies (Transunion LLC, Equifax Information Services LLC, and Experian Information Solutions, Inc.) and a debt collection agency, National Credit Adjusters, LLC ("NCA"). Before the Court is plaintiff's motion to voluntarily dismiss the complaint with prejudice and Experian's motion for sanctions.

**I.    Background**

The complaint alleges that NCA supplied inaccurate information about two of plaintiff's debt accounts to the consumer reporting agencies. The inaccurate information related the age of the accounts. For one account, credit reports issued by Transunion and Experian listed a "Date opened" of December 21, 2019. For the other account, an Equifax credit report listed an open date of July 1, 2017. The complaint alleges that the actual open dates were earlier and that by listing later open dates the reports made plaintiff's accounts "appear more recent" than they really were and caused plaintiff "to appear less creditworthy than she truly is." Compl. ¶ 32. The later open dates allegedly made it seem as though plaintiff had immediately defaulted on the accounts and had no history of making payments. The complaint further alleges that plaintiff sent dispute letters to the credit bureaus but they failed to fix the open dates.

Each of the defendants filed answers, and the parties began conducting discovery. Early on, plaintiff entered into a stipulated dismissal with prejudice as to Transunion. *See* Doc. 31.

1

About four months after the complaint was filed, Experian moved for summary judgment and also moved for sanctions against plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure. *See* Docs. 35, 37. Plaintiff opposed both of Experian's motions.

Two-and-a-half months after Experian filed its motions, plaintiff moved to voluntarily dismiss her complaint with prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure. *See* Doc. 52. Shortly thereafter, plaintiff entered into a stipulated dismissal with prejudice as to Equifax. *See* Doc. 53. Like plaintiff's stipulated dismissal entry with Transunion, the dismissal entry with Equifax stated that it was without costs or attorneys' fees to either party. According to plaintiff's motion to voluntarily dismiss, she sought to enter into the same type of stipulated dismissal entry with Experian and NCA, but they declined.

Experian and NCA both filed briefs in response to plaintiff's motion to voluntarily dismiss. They do not oppose dismissal of the complaint with prejudice.[1] But they oppose a dismissal entry which does not preserve their ability to seek an award of attorneys' fees for what they perceive to be a frivolous lawsuit. Defendants believe that plaintiff's counsel filed this suit either knowing that the claims had no merit or having failed to conduct a reasonable pre-suit inquiry.

Under Rule 41(a)(2), an action may be dismissed at the plaintiff's request by court order "on terms that the court considers proper." Defendants suggest several ways the Court can resolve plaintiff's motion to voluntarily dismiss while balancing their request for the opportunity to pursue attorneys' fees. One is to address Experian's pending motion for sanctions (although NCA has not filed a Rule 11 motion of its own). Another is for the Court to declare defendants to be "prevailing parties," a prerequisite to them pursing attorneys' fees through a post-judgment motion under Rule 54(d). Another is for the Court to grant attorneys' fees and costs as part of the judgment entry, with amounts to be determined later.

The essence of defendants' position is that plaintiff's counsel, Tamir Saland of the firm Stein Saks, PLLC, is the one responsible for sanctionable conduct. Rule 11 expressly provides a mechanism for the Court to sanction an the attorney or law firm responsible for filing frivolous claims. *See* Fed. R. Civ. P. 11(c)(1). Thus, the Court finds that the issue is best addressed through Experian's Rule 11 motion.

---

[1] For this reason, the Court denies Experian's motion for summary judgment (doc. 37) as moot.

2

**II.     The Rule 11 Motion**

   **A.     Legal Standard**

Under Rule 11, an attorney presenting a pleading, written motion, or other paper to the court certifies "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

Fed. R. Civ. P. 11(b).

The "purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and "not interposed for any improper purpose." *Id.*

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The court must choose a sanction which is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

A motion for sanctions "must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Experian's motion asserts two types of violations. First, Experian argues that plaintiff's counsel filed suit without conducting a reasonable inquiry into the allegations regarding the "Date opened" of the account and the dispute letters plaintiff sent to Experian. *See*

3

*Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 959 (6th Cir. 1990) ("Under Rule 11, sanctions may be imposed if a reasonable inquiry would have disclosed that the pleading, motion or other paper was not well-grounded in fact."). Second, Experian contends that plaintiff's counsel continued to pursue this litigation even after being put on notice that the claims were frivolous. *See id.* ("After the complaint is filed, plaintiffs' counsel retain a continuing responsibility to review their pleadings and, if necessary, to modify them to conform with Rule 11.").

> B. The Account's "Date Opened"

Plaintiff alleges that her Experian credit report incorrectly listed the "Date opened" for the account at issue. Experian argues that this claim is baseless, which plaintiff's counsel would have known had he conducted a reasonable inquiry prior to filing suit.

The relevant entry on the Experian credit report appears as follows:

```
NATIONAL CREDIT ADJUSTERS, L.L.C Partial Acct # 166P00581.... 327 W 4TH AVE HUTCHINSON KS 67501 (888) 768 0674
Date opened        First reported    Recent balance        Payment history
Dec 2019           Mar 2020          $644 as of Dec 2020   Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec
Address ID #       Terms             Status                2020  C   C   C   C   C   C   C   C   C   C   C
0091926499         1 Months          Collection account. $644
Original creditor  Monthly payment   past due as of Dec 2020.
SPEEDY CASH        Not reported      This account is scheduled
Type               Credit limit or original to continue on record until
Debt Buyer         amount            Jul 2023.
Responsibility     $644              Date of Status
Individual         High balance      Dec 2019
                   Not reported
```

*See* Doc. 35 at PAGEID 198 (highlighting added).

Experian concedes that on the face of the credit report, the "Date opened" is shown to be "Dec 2019," as the complaint alleges. According to the complaint, the true origination date of this debt was mid-2016.

Experian argues that plaintiff's counsel could have easily determined that December 2019 refers to the date when NCA purchased the debt from the original creditor, Speedy Cash. In the "Status" field, the credit report lists the account as a "Collection account." Experian believes plaintiff's counsel could have discovered with a quick internet search that the open date for a collection account means when the collection agency acquired the debt from the original creditor. *See* Hamilton Decl., ¶¶ 24–25 (stating that this information is available from several sources, including industry guidelines and Experian's website).

Experian further argues that the true age of the underlying debt could have been deduced by again looking at the Status field, which indicates, "This account is scheduled to continue on record until Jul 2023." The FCRA provides that consumer rating agencies cannot report "for more than seven years" an account which has been placed for collection. *See* 15 U.S.C. § 1681c(a)(4).

According to Experian, "that the 'account is scheduled to continue on record until Jul 2023' would make it apparent to a party viewing this account that National Credit Adjusters reported to Experian a date of first delinquency for Plaintiff's Speedy Cash debt a maximum of seven years prior to July 2023."  Doc. 35 at PAGEID 199.

In Experian's view, plaintiff's claim that Experian incorrectly reported the open date of the account could have been disproved with minimal due diligence on counsel's part prior to filing suit. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 410–11 (4th Cir. 1999) ("[A]llegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions.") (internal quotation marks omitted).  Experian believes a reasonable attorney would have understood that the credit report concerned a collection account and accurately stated when NCA purchased the debt.

Plaintiff's counsel responds that even if the "Date opened" entry on the credit report was technically correct, it was still misleading.  Plaintiff's counsel contends that the report should be viewed from the standpoint of a reasonable creditor, who could be misled about the age of the debt when viewing the report.

Counsel cites *Toliver v. Experian Info. Sols., Inc.*, 973 F.Supp.2d 707 (S.D. Tex. 2013) in support, which the Court will discuss below.  But first, Experian objects that plaintiff's counsel is now presenting a theory different from what was alleged in the complaint.  Experian interprets the complaint as alleging only that the credit report was false, not that it was technically correct but misleading.  The Court disagrees.  The complaint expressly alleges that the credit report was "inaccurate" and also that it was "misleading."  Compl., ¶ 18.

The FCRA imposes a duty on consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  A claim for a violation of the FCRA may be supported by showing that a credit report contains information which was "misleading in such a way and to such an extent that it could have been expected to have an adverse effect on the consumer." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942 (6th Cir. 2020) (cleaned up).  *Cf. Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) (the FCRA "is to be liberally construed in favor of the consumer").

*Toliver* adds substantial legal support to the plaintiff's claim. The plaintiff in *Toliver* likewise asserted that the "Date opened" entry on his credit report was misleading because it was not the date when the debt originated.  The court found that plaintiff's theory was a viable one under the FCRA:

5

> Toliver's Experian credit report contained an entry titled "Date opened" with the date that the reporting creditor obtained the debt, rather than the date that the debt actually arose, and indicated that no payments had ever been made.  A reasonable creditor could interpret this . . . to mean that Toliver took out a loan in March of 2006 and immediately defaulted without making any payments.  Although Toliver's Experian credit reports do identify the original creditor, . . . a reasonable creditor might nonetheless conclude that the debt, though once owned by another, was opened and defaulted on in March 2006. . . .  Here, there is no language to indicate that "Date opened" means anything other than the date that the consumer opened the account, as it does for the majority of accounts on Toliver's credit report.  Thus, although it is a very close call, drawing all inferences in a light most favorable to Toliver, a reasonable jury could find that the "Date opened" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  [*Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998)].

*Toliver*, 973 F.Supp.2d at 721–22.

This Court agrees with *Toliver* that the viability of a theory like plaintiff's is a "close call."  On one hand, a quick review of the credit report could mislead a creditor into thinking plaintiff immediately defaulted on the debt.  On the other hand, the report's indication of the account being under collection might cause a reasonable creditor to further examine the age of the debt.

After considering the complaint's allegations, the Experian credit report, the provisions of the FCRA, and the holding in *Toliver*, the Court concludes that plaintiff's counsel had a nonfrivolous basis for the claim that the "Date opened" entry was misleading.  The bottom-line concern of Rule 11 is to deter baseless filings in federal court, and plaintiff's theory was not baseless.

### C. Dispute Letters

The FCRA enables consumers to dispute the accuracy of an item contained in a credit report.  *See* 15 U.S.C. § 1681i(a)(1)(A).  Upon receiving notice of a dispute, the consumer reporting agency has a duty to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *Id.*

The complaint alleges that plaintiff notified each of the three credit bureaus that she was disputing the open dates listed on her credit reports.  She allegedly did so on or around August 27, 2022.  The complaint alleges that the credit bureaus failed to conduct a reasonable reinvestigation of the "Date opened" entries in the credit reports.

Experian argues that these allegations are baseless and with minimal inquiry plaintiff's counsel could have determined that plaintiff never disputed the open date of the NCA account.  Experian has produced three letters which it received from plaintiff.  The letters are dated June 8,

6

July 19, and October 13, 2022.  *See* Doc. 39 at PAGEID 729, 756, 783.  In these letters, plaintiff raised disputes relating to numerous accounts on her credit report.  Regarding the NCA account, she disputed that she "had a contract with the debt collector for any debt" and disputed that the debt collector "owns this debt and has the legal authority to collect it."  *Id.* at PAGEID 729 756, 783.  In none of the letters did plaintiff dispute the open date of the account.

Plaintiff's counsel has pointed to two documents which formed the basis of his belief that plaintiff had in fact disputed the open date of the account.  The first is a letter addressed to Experian and dated August 26, 2022.  *See* Doc. 37-4.  In the letter plaintiff again raised disputes over numerous accounts.  Regarding the NCA account in particular, the letter states:

> The open date reported on this account is wrong and it's negatively affecting my score. . . . Please correct this false information immediately or delete the negative information on this account.

*Id.*

The second document is a log entry created when plaintiff submitted a dispute on or about September 9, 2022.  *See* Doc. 44-2.  The log is kept by an online service called e-OSCAR.  *See* Hamilton Second Decl., ¶ 6 (explaining that e-OSCAR is a "web-based service that allows Experian and other consumer reporting agencies to transmit Automated Consumer Dispute Verification (ACDV) forms to data furnishers when a consumer disputes an item of information with the reporting agency.  Data furnishers then use e-OSCAR to return the ACDV to the originating consumer reporting agency upon completion of the furnisher's investigation.").  The log shows plaintiff requested that the open date of the account be reported as "09/01/2016."  *Id.*

Experian takes issue with both documents.  It correctly points out that the August 26, 2022 letter is not signed, nor has it been authenticated.  And it correctly points out that the e-OSCAR log shows that plaintiff's September 9, 2022 dispute was originally directed at Equifax, not Experian. *See* Doc. 44-2; *See* Hamilton Second Decl., ¶ 9 (stating that the log's Originator Code of EFX corresponds to Equifax).

While Experian's arguments highlight deficiencies with the weight of plaintiff's evidence, the Court is not convinced that the deficiencies prove that the complaint's allegations were baseless. The August 26, 2022 letter, though unsigned, is consistent in format, style, and substance with the three which Experian acknowledges it received from plaintiff.  The date of the letter matches what the complaint alleges, and plaintiff testified that she thought she had a signed copy and had shown it

7

to her attorney.² *See* Bowles Dep. at 134–35, 160–61. *See also id.* at 141–42 (testifying that she did dispute the open date on her credit reports with the credit bureaus). Moreover, Experian admits that it received a carbon copy of the September 9, 2022 e-OSCAR log. *See* Hamilton Second Decl., ¶ 9 (stating that the log "shows an e-OSCAR carbon copy Experian received on September 9, 2022 of [an] update request that National Credit Adjusters transmitted to Equifax"). Thus, Experian was at least indirectly put on notice of plaintiff's dispute of the account's open date.

Upon review of the record and the complaint's allegations, the Court concludes that plaintiff's counsel had a nonfrivolous basis for the allegation that plaintiff had disputed the open date with Experian.

### D. Continued Pursuit of the Litigation

Experian argues that plaintiff's counsel engaged in sanctionable conduct by pursuing the litigation after having been notified by Experian that the claims were baseless. Nearly two months before filing its motion for sanctions, Experian served plaintiff's counsel with a letter warning it would seek Rule 11 sanctions if plaintiff did not voluntarily dismiss her claims within 21 days. *See* Doc. 35-8. Experian asserted that the claims were frivolous because the open date referred to the date NCA purchased the debt and because plaintiff's dispute letters did not challenge the open date.

In light of the Court's findings that plaintiff's counsel had a nonfrivolous basis for the claims, the Court also rejects Experian's argument that plaintiff's counsel continued pursuit of the litigation was sanctionable.

### III. Other Concerns Raised by Defendants

Experian and NCA have argued that this lawsuit is part of a larger pattern by the Stein Saks law firm in filing meritless suits under the FCRA across the country. In defendants' view, the suits are factually baseless and are brought with the hopes of achieving a quick settlement.

Of particular concern to defendants is a November 17, 2022 email produced by plaintiff during discovery. *See* Doc. 45-5. The email is a denial of credit letter from a credit union, and the recipient is redacted. Defendants believe that an outside agent of Stein Saks, rather than plaintiff herself, possibly applied for credit in order to create sham evidence of damages. Defendants argue that the email, along with the unsigned August 26, 2022 dispute letter, serve to potentially indicate that Stein Saks fabricated evidence to support the claims. NCA requests that the Court permit further discovery on this matter.

---

² Plaintiff was unable to produce a signed copy of the letter during discovery.

The Court notes that plaintiff has now produced an unredacted version of the email. *See* Doc. 62-5. It shows that plaintiff Yvonne Bowles was the recipient of the denial of credit letter. Further, as noted above, plaintiff testified that she believed she had signed the August 26, 2022 dispute letter. Whether Stein Saks has engaged in improper litigation practices in other suits is not the concern of this Court.[3] It suffices to say that plaintiff has set forth a nonfrivolous basis for her claims.

## IV. Conclusion

For the reasons stated above, Experian's motion for sanctions (doc. 35) is denied. Experian's motion for summary judgment (doc. 37) is denied as moot. NCA's motion to re-open discovery (doc. 69) is denied. Plaintiff's motion to strike Experian's notice of supplemental authority (doc. 67) is denied as moot.

Plaintiff's motion to dismiss the complaint (doc. 52) under Rule 41(a)(2) is granted. The Court hereby DISMISSES THIS ACTION WITH PREJUIDCE as to remaining defendants Experian and NCA and does so without an award of costs or attorney's fees.

DATE: June 27, 2024

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

---

[3] The Court takes judicial notice that Experian has sued Stein Saks in the United States District Court for the Central District of California, alleging that the firm has violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. *See Experian Information Solutions Inc v. Stein Saks, PLLC*, Case No. 8:24-cv-1186 (C.D. Cal).